**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **JAMES HOPSON** | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | **Civil Action No. 6:09-CV-0506** |
| | § | |
| **TDCJ-CID, ET AL.,** | § | |
| *Defendants.* | § | |

**DEFENDANTS PIERCE AND LOWRY'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Hopson, an offender confined at the Michael Unit who currently lists his faith preference as Native American, filed this action on November 8, 2009. Hopson brings this action under the Religion Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, "RLUIPA," alleging that Defendants have substantially burdened his free exercise of religion by denying him access to sacred land for prayer study and pipe ceremonies with his Native American Indian religious group in accordance with the mandates of his faith. Complaint, D.E. No. 1, at 3 ¶ 12. He also contends that Defendants substantially burdened his free exercise of religion by denying him the opportunity to obtain his own personal ceremonial pipe - to be stored in the chapel - which he seeks to prevent the spread of germs, viruses, diseases and pathogens. *Id.* at ¶ 13. He requests injunctive relief - to gather and worship with his faith group when an approved volunteer is unavailable. Bill Pierce is the Director of Chaplaincy, who is employed in Huntsville, Texas. Cynthia Lowry is a chaplain at the Michael Unit.

An evidentiary hearing was held on July 1, 2010. Subsequently, the Magistrate Judge recommended that Hopson's various claims against Quarterman, Rupert, Kirkpatrick and the Texas Department of Criminal Justice, Correctional Institutions Division be dismissed with prejudice. D.

E. No. 30.  She allowed Hopson to proceed on his claim regarding the denial of Native American

services.  *Id.* at 4.  Although Hopson did not seek damages in his Complaint, it was noted that during

the evidentiary hearing he had requested compensatory and punitive damages.

## I.

### Statement of the Issues to be Decided by the Court

1.      Whether Hopson's claim regarding his desire to have his own personal ceremonial pipe

        should be dismissed for failure to exhaust.

2.       Whether Hopson can seek *any* damages.

3.      Whether Hopson's requested injunctive relief is moot.

4.      Whether Hopson has shown a violation of RLUIPA.

5.      Whether Hopson has shown a violation under the free exercise clause.

6.      Whether Defendants are entitled to qualified immunity.

## II.

### Statement of Undisputed Material Facts

1.      Plaintiff has designated his faith preference to be Native American.

2.      Defendants were, at all times relevant to this lawsuit, employees of TDCJ - CID.

3.      Defendant Lowry is a unit chaplain at the Michael Unit.

4.      Defendant Pierce is the Director of Chaplaincy Operations for TDCJ - CID.

## III.

### Exhibits

**Exhibit A**      Affidavit of Billy Pierce

**Exhibit B**      Affidavit of Robert Eason

2

# IV.

## Argument and Authorities

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).  Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.   *Hopson has failed to properly exhaust his claim about a personal pipe*

Hopson contends that Defendants have substantially burdened his free exercise of religion by denying him the opportunity to obtain his own personal ceremonial pipe - to be stored in the chapel - which is sought to prevents the spread of germs, viruses, diseases and pathogens. Complaint, D.E. No. 1, at 3 ¶ 13.  However, Hopson never filed a grievance on this claim, and it should be dismissed.

Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints.  *Jones v. Block,* 549 U.S. 199, 216 (2007).  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  *Id.* at 218.  TDCJ has a two-step formal grievance process.  A prisoner must pursue a grievance through both steps for it to be considered exhausted. *Johnson v. Johnson,* 385 F.3d 515 (5th Cir. 2004); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir.2001).

> Among other things, the rules direct inmates to write "briefly and clearly" but also to "be very specific about your grievance or your problem." They state that a

3

grievance should contain facts, not legal words or conclusions. They further direct the prisoner to "[t]ell us what action you want us to take to resolve your grievance or problem," but they specifically state that a prisoner should "not ask us to take disciplinary action against employees." The guidelines state that an inmate should not "submit repetitive grievances on the same issue." Finally, they warn that an inmate is subject to sanctions for abusing the grievance process, such as by making "excessive, frivolous and vexatious use of the procedure." *Johnson,* 385 F.3d at 515-516.

"[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *Id.* at 522. Hopson must have pursued a grievance through both steps for it to be exhausted. *Id.* at 515 (citing *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir.2001)). Because Hopson failed to file a grievance regarding this claim, he did not provide TDCJ with a fair opportunity to address the problem he now raises. Therefore, this case should be dismissed for failure to exhaust.

**B.    *Hopson is barred from seeking damages***

1.    Defendants are entitled to Eleventh Amendment immunity in their official capacity for claims seeking damages. *Kentucky v. Graham,* 473 U.S. 159 (1985).

2.    Because Hopson did not sustain (and failed to allege) any physical injury, he is barred by the PLRA from seeking compensatory damages for emotional injuries under either the free exercise clause or RLUIPA. *Mayfield v. Texas Dept. Of Criminal Justice*, 529 F.3d 599, 606 (5th Cir.2008); *Geiger v. Jowers,* 404 F.3d 371, 375  (5th Cir. 2005).

3.    Hopson is not entitled to any damages under RLUIPA, because it does not create a cause of action against defendants in their individual capacities, **and** sovereign immunity bars a cause of action for damages against Texas persons in their official capacities. *Harvey Leroy Sossamon, III v. The Lone Star State of Texas, et. al.,* 560 F.3d 316 (5th Cir. 2009), cert. granted, 2010 WL 2025142 (U.S. May 24, 2010) (No. 08-1438).

4. As will be shown below, Defendants are entitled to qualified immunity for any damages sought under 42 U.S.C. § 1983.

**C.   *Hopson has not shown a violation of law***

**1.   *Hopson's request for injunctive relief is moot***

To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis v. Continental Bank Corp.*, 494 U. S. 472, 477 (1990). A case becomes moot if (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

Hopson complains about the lack of Native American services when a volunteer left TDCJ in 2009. He seeks injunctive relief "so that he can gather and worship with his faith group when an approved volunteer is unavailable under the direct supervision of the unit chaplain." Complaint at 4. Hopson has received the requested relief. Since 2010, Native American services have been conducted at least monthly at the Michael Unit. Defendant Pierce testifies about this in his affidavit.

> Prior to May, 2009, Guillermo Nieto, the Native American ("NA") contract chaplain from Diboll, Texas, conducted monthly NA services at the Michael unit. Nieto became ill and it became difficult for him to travel. Consequently, the last NA service he conducted at that unit was April 18, 2009. Nieto notified TDCJ Chaplaincy Headquarters, April 27, 2009 that he would not be renewing his contract due to health reasons. He was asked to assist in the recruiting of volunteers and his replacement. At the same time, Chaplaincy Headquarters began looking for alternative service providers. There were no other volunteers or NA contract chaplains available to provide the necessary supervision for either monthly or weekly NA meetings at the Michael unit.
> When it became apparent that Nieto would not be returning, the Chaplaincy Department begun a concerted effort to recruit volunteers for NA and other small faith groups. A poster was developed which encourages participating volunteers to help these groups by serving as a volunteer or finding others who will do so. The

poster was posted at all units of the prison system at a location where volunteers would see it.  All TDCJ chaplains were enlisted in this recruitment effort. At volunteer appreciation events and other volunteer meetings, those in attendance are asked to help by being volunteers for these small faith groups.

Additionally, considerable efforts have been made to find either an unpaid volunteer or paid contract chaplain to conduct monthly NA services.  These efforts are briefly described as follows.  Between May, 2009 and March 2011, the following resources were contacted: 1) Sam Lonewolf, a former NA volunteer in the Palestine area; 2) the Alabama Coushatta Tribe; 3) Horsekeeping, LLC; 4) Tigua Indians, Sammy Gutierrez; 5) Professor Lara-Lisa Condello of the Nicola Valley Institute of Technology: 6) Institute of Indigenous Government of Canada; 7) Dr. PeSheWa, NA Church of Strawberry Plains Tennessee; 8) Without Reservation, Kent Frazier; 9) Storyteller radio program, Doug Trapper; 10) Dr. Bob Pierce, United Methodist NA Mission; and 12) Chari Bouse, Northern Towns District Tribal Chief, Cherokee Nation.

As a result of these efforts, NA offender faith adherents at the Michael unit have been provided the following services. Dr. Bob Pierce provided a service on June 30, 2010. Sam Lonewolf provided services twice a month at the Michael unit from July 2010 to November 2010.  Chaplaincy provided a DVD of Dr. Pierce conducting services monthly from December 2010 until February 2011. Contract NA Chaplain Chari Bouse began providing monthly NA services at the Michael unit on March 7, 2011. Should Chaplain Bouse not be available in the future, Chaplaincy will again provide a DVD of Dr. Pierce conducting monthly services.

Exhibit A.  Thus, because interim events have eradicated Hopson's requests for injunctive relief, this claim should be dismissed.  Additionally, as Defendant Pierce states, provisions have been made to utilize services recorded on DVD should a vacancy occur in the future.  Thus, there is no reasonable expectation that the problem will occur again, and Hopson's request for injunctive relief should be dismissed as moot.

## 2.    RLUIPA

Even if Hopson's claims were not moot, he has not shown a violation of law.  The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc (RLUIPA), provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of general applicability, unless the

government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

Initially, it falls to Hopson to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise, which requires this court to answer two questions: (1) is the burdened activity "religious exercise" and, if so, (2) is the burden "substantial"? *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004).  A government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. *Id.* at 570.

> [T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs.  A government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed. *Id.*

"The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Sossamon,* 560 F.3d at 332 (citing *Adkins v. Kaspar*, 393 F.3d at 567).  If Hopson is able to show a substantial burden on his religious exercise, the burden shifts to Defendants to demonstrate that the policies are the least restrictive means of furthering a compelling governmental interest. *See Mayfield*, 529 F.3d at 613 (citing 42 U.S.C. § 2000cc-2(b)).

To show a compelling governmental interest, Defendants need only " 'take the unremarkable step of providing an explanation for the policy's restrictions that takes into account [their] institutional need to maintain good order, security, and discipline or to control costs.'" *Smith v.*

*Ozmint,* 578 F.3d 246, 252 (4th Cir.2009) (quoting *Lovelace v. Lee,* 472 F.3d 174, 190 (4th Cir.2006)).   Both the Supreme Court and Congress have indicated that courts are to apply that standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter,* 544 U.S. 709, 721 (2005), citing 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA (quoting S. Rep. No. 103-111, at 10 (1993)), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1899, 1900.   "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id.* (RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns.") Prison security is a compelling state interest, and deference is due to institutional officials' expertise in this area. *Id.* at 725.   RLUIPA does not elevate accommodation of religious observances over a prison's need to maintain order and safety, and any accommodation must be measured so that it does not override other significant interests. *Id.* at 722.

First, Hopson has failed to show a substantial burden because he is receiving Native American services. Exhibit A.  Additionally, TDCJ has met its burden.  TDCJ requires that services be supervised for security reasons.  Exhibit B.  Maintaining security is a compelling governmental interest. *Cutter,* 540 U.S. at 721.  TDCJ is using the least restrictive means in furthering that interest, and has made provisions that if a volunteer is not able to be at a Native American service, a videotape will be utilized instead  Exhibit A.  Hopson has not shown a violation of RLUIPA.

### 3.    Free Exercise

The constitutional protections afforded to offenders under the Free Exercise clause of the United States Constitution are considerably limited by the reality of incarceration and the conflict posed by legitimate penological objectives.  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987*)*(quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

When faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a "substantial burden" on the prisoner's ability to practice his religion.  *Gladson v. Iowa Dept. of Corrections,* 551 F.3d 825, 833 (8th Cir. 2009), citing *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008).  If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim. *Patel,* 515 F.3d at 813.   Because Hopson has not shown a violation under RLUIPA, this Court need not examine his claim any further.  Assuming, *arguendo,* this claim were analyzed under the free exercise clause, TDCJ has a legitimate penological interest in ensuring that services be supervised for security reasons.  Providing a videotape in the absence of the Native American volunteer is a rational alternative.  Hopson has not shown a violation of the free exercise clause.

### 4.    Defendants are entitled to qualified immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

9

constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Elliott v. Perez,* 751 F. 2d 1472, 1476-79 (5th Cir. 1985). It is a plaintiff's burden to overcome a defendant's qualified immunity. *Bennett v. City of Grand Prairie,* 883 F. 2d 400, 408 (5th Cir. 1989). Whether an official asserting qualified immunity is immune from suit is determined by the 'objective reasonableness' of his action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987), (quoting *Harlow*, 457 U.S. at 818). A constitutional right must be implicated, and "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990). As shown above, Hopson cannot show a constitutional violation. Additionally, Defendants' actions, if any, were reasonable in that many attempts were made to find a volunteer and, in the absence of one, videotapes were shown.

## V.

## Conclusion

WHEREFORE, Defendants pray that they be granted summary judgment and that this case be dismissed with prejudice. Defendants further pray that they be awarded attorney's fees, costs, and any other relief which this Court deems is just and proper.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

10

WILLIAM C. MATTAX
Director of Defense Litigation

DAVID A. TALBOT, JR.
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ M. CAROL GARDNER
M. CAROL GARDNER
Assistant Attorney General
Carol.Gardner@oag.state.tx.us
Lead Attorney
State Bar No. 09329490

P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
[Tel.] (512) 463-2080
[Fax] (512) 495-9139

**ATTORNEYS FOR DEFENDANTS
PIERCE AND LOWRY**

## NOTICE OF ELECTRONIC FILING

I, M. CAROL GARDNER, Assistant General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendants Pierce and Lowry's Motion for Summary Judgment** in accordance with the Electronic Case Files System of the Eastern District of Texas, on the 6th day of April, 2011.

/s/ M. CAROL GARDNER
M. CAROL GARDNER
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, M. Carol Gardner, Assistant Attorney General of Texas, certify that a true and correct copy

of the above and foregoing **Defendants Pierce and Lowry's Motion for Summary Judgment** was

served by United States postal service, on April 6, 2011, addressed as follows:

James Hopson, TDCJ-CID # 754657
Michael Unit
P. O. Box 4500
Tennessee Colony, Texas 75886

/s/ M. CAROL GARDNER
M. CAROL GARDNER
Assistant Attorney General