IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES HOPSON | § | |
| v. | § | CIVIL ACTION NO. 6:09v506 |
| TDCJ-CID, ET AL. | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT</u>

The Plaintiff James Hopson, proceeding *pro se*, filed this lawsuit under the Religious Land Use and Institutionalized Persons Act complaining of alleged violations of his rights under the Act. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

In his complaint and at an evidentiary hearing, Hopson stated that he is a practitioner of Native American religion.  He says that the Defendants are substantially burdening his right to exercise his religious faith by denying him access to sacred land for prayer study and pipe ceremonies, and are denying him the opportunity to obtain his own personal ceremonial pipe.  He said that according to TDCJ policies, if no volunteer can be found to oversee a religious gathering, the gathering should proceed under the supervision of unit personnel as directed by the warden or designee.  He says that the unit chaplain is "inter-faith" and so she can oversee all faiths, whether Muslim, Native American, Jewish, or any other.  Hopson argued that it is the responsibility of the chaplain to ensure that such matters are facilitated, and that while it is true that unforeseen circumstances could arise, the Native Americans at the unit did not have a service for 15 months. Instead, he says that they were continually told that "we don't have a volunteer for you" and so the

1

Native Americans would "just have to wait." Hopson stated that the volunteer system is not mandatory in any event because the chaplaincy department is supposed to take care of having services but they do not. Testimony from Warden Dewberry and Chaplain Lowry, given at the evidentiary hearing in the case, indicated that the policy at the Michael Unit, as directed from the central chaplaincy department in Huntsville, was that groups lacking a volunteer could not proceed with services. Chaplain Lowry also indicated that since June of 2010, there had been a Native American volunteer at the Michael Unit and so services had resumed.

After the evidentiary hearing, the claims against TDCJ, former Director Nathaniel Quarterman, Warden Rupert, and grievance investigator Pamela Kirkpatrick were dismissed. TDCJ Chaplaincy Director Bill Pierce and unit chaplain Cynthia Lowry were ordered to answer the lawsuit and have done so. On April 6, 2011, Pierce and Lowry filed their motion for summary judgment. Hopson has filed a response to this motion, as well as a motion for summary judgment and a brief in support.

In their motion for summary judgment, the Defendants argued that Hopson had failed to exhaust his administrative remedies with regard to some of his claims, that Hopson cannot seek damages under RLUIPA, and that Hopson's claims concerning services for Native Americans are moot because services have resumed for Native Americans. To the extent that these claims may not be moot, the Defendants argued that Hopson has failed to show a substantial burden because services have resumed and such services must be supervised for security reasons, which is a compelling governmental interest. They further state that TDCJ is using the least restrictive means of furthering that interest by making provisions that if a volunteer cannot be present to conduct services, a video tape will be utilized instead. The Defendants also asserted that Hopson had not set forth a valid claim under the Free Exercise Clause of the First Amendment.

In his response to the Defendants' motion, Hopson disclaimed any intent to bring a Free Exercise Clause claim, relying instead upon RLUIPA. He denied seeking Native American services

with or without a volunteer or unit security present, saying that he wants services under the direct supervision of the unit chaplains or prison security.

Hopson argued that he did exhaust his administrative remedies, saying that his claim involves several "substantial burden" issues and because TDCJ does not allow attachments to Step One grievances, he made a "general substantial burden showing" in his Step One grievance.  He stated that if the unit grievance investigator had investigated the grievance as required by TDCJ policies, the investigation worksheet would have "shown the denial of individual prayer pipes substantially burdens his religion."  However, he says that an investigation was never conducted, and so he cannot be barred from raising the claim; additionally, Hopson says, he has recently filed another grievance to exhaust the claim, and so the issue will be exhausted by trial.

Hopson stated that he was only seeking injunctive relief, and that his claims are not moot because "he has not had a religious experience since April 18, 2009."  Since the filing of this suit, he says, the religious paraphernalia of the Native Americans at the Michael Unit has been stolen, and they are forced to meet indoors, where smoking and smudging are prohibited. He further asserts that the showing of videos is "non-religious" and not a valid substitute for true Native American prayer pipe ceremonies.  Hopson concedes that TDCJ has hired a contract chaplain named Chari Bouse, but says that the Native Americans still have not had a pipe ceremony because they are forced to meet indoors in the gym, where smoking and smudging are prohibited.

In his motion for summary judgment and an accompanying memorandum, Hopson says that he filed grievances, which were denied, and that TDCJ rules prohibit the possession of tobacco, prayer pipes, and burning herbs in cells.  He says that Native Americans do not have a "sacred text."

Hopson says that TDCJ regulations require that unit chaplains or security personnel monitor, facilitate, and supervise all religious programs, but that there is a shortage of Native American chaplains and approved volunteers.  He says that volunteers are not security personnel and do not receive security training.

According to TDCJ policy, Hopson says, pipe ceremonies are to be conducted no more than twice a month, contingent on the availability of a Native American chaplain, volunteer, or unit chaplain.  Sacred land is important to Native American worship, and so in-cell solo worship is not an acceptable "alternative means."

With regard to sacred land, Hopson argues that space and costs are not compelling state interests because there is "plenty of bare ground" at the Michael Unit and the unit employs two full-time chaplains.  Hopson argues that "sacred land" is considered "religious exercise" under RLUIPA and that a hundred prisoners should not have to use the same prayer pipe for health reasons.

Hopson points out that TDCJ Administrative Directive 9.03 acknowledges Native American prayer ceremonies and religious paraphernalia.  He says that under prison policy, the Native American prayer ceremonies can be supervised by a qualified Native American chaplain or volunteer or a qualified unit or facility chaplain.  However, the prison is not following this policy, but is relying on the approved volunteer program to supervise religious programs and have made this program into an "unofficial mandatory government action." Hopson contends that this substantially burdens his religious exercise because TDCJ will not let the Native Americans gather for prayer ceremonies or oral teachings unless a contract chaplain or approved volunteer is available.  Although he acknowledges that Pierce drafted a policy statement to this effect, he maintains that this conflicts with other policies, including policies drafted by the Executive Director of TDCJ.

After discussing the shortage of contract chaplains, a problem which Hopson says "may need to be addressed by the Court," he says that the Defendants regularly deny Native Americans access to sacred land.  Hopson says that the proffered alternative is in-cell worship, but this is impossible for him because he is not allowed to possess the items needed for prayer and cannot smoke or smudge in his cell.  Nor can he refer to a sacred text as a substitute for pipe ceremonies because Native Americans have none.

With regard to the prayer pipes, Hopson quotes TDCJ regulations as saying that the pipes are "held in high esteem," but points out that individual pipes are not permitted; thus, the inmates must

4

use a "group pipe."  Hopson says that this pipe is thereby desecrated in a number of ways, including through simple illnesses such as colds or flus, through persons with infectious diseases or open wounds, through one person having animosity with another, or through women having menstrual periods.  Although Native Americans are required to enter the sacred circle with  a clean heart and spirit, Hopson says that the prayer pipe can be desecrated with negative energy, making its use ineffective.

In July of 2010, Hopson says, a prison official from Huntsville drove to the Michael Unit and confiscated all of the Native American religious paraphernalia.  He cites a grievance response from February of 2011 saying that an inventory had been conducted and the items given to Dr. Bob Pierce, the Native American contract chaplain, for purification, care, and storage, and they would be used as needed in services; however, Hopson says, the items have not been returned, nor have they been used by the Native American community.[1]

Hopson also contends that two of the three days per month that the Native Americans had set aside for worship were "taken away and given to the Christians." He says that the Native Americans do not need a building in which to worship, but only "a bare piece of ground."  Cost is not an issue because the Michael Unit has two unit chaplains who can oversee the services.

Hopson averred that TDCJ policies are contradictory and the conflict between is part of the "substantial burden" of his religious exercise.  He says that Bill Pierce has misused his authority to cancel or delete Native American religious practices, and that Pierce's revision of Administrative Directive 9.03 conflicts with other policies, including E.D. 7.29 as well as Administrative Directives 7.30 and 7.35.  Hopson makes clear, however, that he does not challenge the policies themselves, but only the application of the volunteer program; he says that he cites the policies to support his claim that TDCJ should allow Native Americans to gather for prayer ceremonies under the supervision of the unit chaplain when a contract chaplain is not available.

---

[1]This incident happened after the filing of the present lawsuit.

Hopson argues that the application of the volunteer program substantially burdens his religious exercise, although he describes it as a "win-win program." He cites the response to Step One grievance no. 200915522 as saying that according to Pierce, worship services will continue when an approved volunteer or contract chaplain can be present and space is available.  However, Hopson says that according to policies 7.29, 7.30, 7.35, and 9.03, any ceremony prescribed by a religious group as a requirement for adherents and approved by TDCJ authorities will be coordinated by the unit chaplain, and if no substitute can be found, the gathering shall be conducted under the supervision of unit personnel as directed by the warden or designee, and all religious activities will be under the general supervision of the unit chaplain.  Pipe ceremonies will be conducted no more than twice a month, contingent on the availability of a qualified Native American chaplain or volunteer, or a qualified unit or facility chaplain.

Based on these policies, Hopson argues that if a volunteer or contract chaplain is not available, the unit chaplain can facilitate or supervise the gathering, but Chaplain Lowry does not want to accommodate the Native Americans when a volunteer is unavailable.

Hopson acknowledges that TDCJ hired a contract chaplain, Bob Pierce, in 2010, but says that Pierce is not himself a Native American and has never performed or even participated in a pipe ceremony.  He adds that Pierce's academic background was not in Native American worship but in history, and that his services are "ineffective" with regard to prayer services for Native Americans in TDCJ.

Hopson says that inmates at the Hughes Unit and the McConnell Unit are allowed to have worship ceremonies outside, on Mother Earth, but that inmates at the Michael Unit are required to gather in the gymnasium, on concrete, where they cannot smoke or smudge.  He complains of a response to grievance no. 2009120529, which says that the Michael Unit chaplains are following policy and that services would be provided when there is an approved volunteer, and that inmates can worship in their cells using sacred texts, devotional items, and materials.  Hopson says that the

6

Fifth Circuit has held that solo worship is inadequate to remedy the burden, citing <u>Sossamon v. Lone Star State of Texas</u>, 590 F.3d 316 (5th Cir. 2009).

After again discussing the prayer pipes and the alleged theft of the religious paraphernalia, Hopson complains that Native Americans are not given the opportunity to perform "physical acts of religious exercise" such as leading pipe ceremonies, smudging, acting as guardians of the sacred circle, and teaching religious and cultural traditions.  He notes that Muslims have weekly teaching services called "Taleem" which does not require a contract chaplain to be present, stating that the service is conducted by the inmates themselves.

Hopson concedes that safety and security are compelling governmental interests, but says that the Defendants' argument to that effect is grounded on "mere speculation, exaggerated fears, or post hoc rationalizations."  He states that the Defendants did not point to any specific evidence or to any actual security breaches involving Native Americans under the direct or general supervision of a unit chaplain.  According to Hopson, the "least restrictive means" is to allow the Native Americans to gather twice a month for pipe ceremonies and twice a month for oral teachings.  If tobacco cannot be used, an herb called kinnikinnic may be substituted.  These gatherings should be held outdoors, on bare ground, and can be coordinated by inmates under the "direct or general supervision of the unit chaplain."

In a "motion for a matter of law," Hopson asserted that on July 11, 2011, approximate 130 to 150 Native American practitioners gathered for their first outdoor meeting since April of 2009. They were placed in 7 Gym, strip searched, and ordered to face the wall until they were escorted outside; Hopson says that there were approximately 22 prison officials present.  He says that this was a "frightening and intimidating" experience, and that Christian or Muslim inmates were not treated in such a fashion; inmates left because they were "uncomfortable" and only 61 inmates actually attended the outdoor services. This incident happened some 10 days prior to the filing of the motion, and Hopson indicated that grievances were in the process of being filed.

<u>The Magistrate Judge's Report</u>

After reviewing the facts of the case and the legal standards governing summary judgment, the Magistrate Judge first addressed the issue of exhaustion of administrative remedies. The Magistrate Judge observed that Hopson had filed one grievance, no. 2009195522, concerning religious exercise which he pursued through both the Step One and Step Two grievance procedures. The Magistrate Judge set out the Step One and Step Two grievances in their entirety, as well as the responses, and concluded that Hopson did not exhaust his administrative remedies concerning the pipe ceremonies, the use of sacred land, harassment of Native Americans prior to a ceremony, the lack of "physical exercises" such as smudging or serving as pipe carriers, guardians of the sacred circle, bundle keeper, and drum keeper. The Magistrate Judge rejected Hopson's contention that he had exhausted his claim about the pipes by making a "general substantial burden showing." Thus, the Magistrate Judge concluded that Hopson had exhausted his claims that Native Americans are not allowed to gather and worship unless a volunteer or contract chaplain is present, and that Native Americans are being treated differently from Christians and Muslims in this regard. The Magistrate Judge stated that these claims are inter-related and so would be addressed together.

With regard to the requirement for a volunteer, the Magistrate Judge acknowledged that the response to Hopson's grievance indicated that according to chaplaincy director Bill Pierce, services would continue when an approved volunteer or contract Native American chaplain could be present and space was available.

The Magistrate Judge looked to <u>Adkins v. Kaspar</u>, 393 F.3d 559 (5th Cir. 2004), in which a small religious group called Yahweh's Evangelical Assembly was not allowed to assemble and hold religious services on their own, in the absence of an outside volunteer, of which there was only one, Jerry Healan. The group could listen to tapes sent by Healan, but the tape sessions were only held on Mondays, not on the group's sabbath of Saturdays. The evidence in the case showed that YEA members could congregate on the Sabbath if Healan was present, and that another couple, the

McEnanys, was in the process of being accredited as volunteers.  Once they were accredited, they would be able to lead services on their own.

The district court concluded that the defendants had not denied Adkins a reasonable opportunity to practice his religion and that they had not burdened his religious exercise in violation of RLUIPA.  On appeal, the Fifth Circuit concluded that Adkins had not shown a Free Exercise violation, and then turned to RLUIPA. The court said that the Sabbath and holy day gatherings were a "religious exercise" under the Act, raising the question of whether the burden was "substantial." The Fifth Circuit said that a burden was "substantial" if it "truly pressures the adherent to significantly modify his religious behavior and significantly modify his religious beliefs," and that the effect of a government regulation is significant if it "influences the adherent to act in a way that violates his religious beliefs, or forces the adherent to choose between enjoying some generally available non-trivial benefit or following his religious beliefs.  The Fifth Circuit noted that a government action does not rise to the level of a substantial burden if it merely prevents the adherent from either enjoying some benefit not otherwise available, or acting in a way not otherwise generally allowed.  Adkins, 393 F.3d at 569-70.

With regard to the specific claims in the case, the Fifth Circuit stated that Adkins was prevented from congregating together with other YEA members on many Sabbath and YEA holy days, but that this fact resulted from a shortage of qualified outside volunteers, not a rule or regulation prohibiting such gatherings.  With the exception of Muslims who are subject to a special court order, every religious group at Coffield is required to have an outside volunteer present.  The Fifth Circuit noted that Adkins and the other YEA members were allowed to gather every time that Healan was available to go to Coffield, and that the requirement of an outside volunteer did not place a substantial burden on Adkins' religious exercise.

Thus, the Magistrate Judge said, the Fifth Circuit upheld the requirement of having outside volunteers for assembly, the requirement about which Hopson complains.  In Mayfield v. TDCJ, 529

F.3d 599 (5th Cir. 2008), however, the Fifth Circuit explained that <u>Adkins</u> required a fact-specific, case-by-case review.

In <u>Mayfield</u>, the evidence showed that the Odinist religious ceremony, known as "Blotar," should be conducted at least monthly. TDCJ required that an outside volunteer be present, but the only approved volunteer lived in Arkansas and could not come to the unit as frequently as the Odinists wished. Mayfield asked for permission to hold Odinist group meetings without a volunteer, but permission was refused.

The Fifth Circuit held that disputed issues of fact existed, precluding a grant of summary judgment. Specifically, the Fifth Circuit said that the record was unclear as to how often the volunteer could come; Mayfield said that the volunteer came at most twice a year, but only twice in the past three years, much less frequently than Healan could come to the prison in <u>Adkins</u>, and unlike in <u>Adkins</u>, there was no evidence that new volunteers would be available in the near future. The Fifth Circuit did note that if all 140 religious groups requested the ability to meet without an outside volunteer, prison security would be seriously compromised by the need to remove personnel from their normal security posts. The Magistrate Judge stated that this would appear to be particularly true where, as in the present case, a group sought permission to meet outside.

The Magistrate Judge went on to note that in <u>Odneal v. Pierce</u>, 324 Fed.Appx. 297, 2009 WL 901511 (5th Cir., April 3, 2009), a case decided after <u>Mayfield</u> was published, the Fifth Circuit had upheld the policy of requiring outside volunteers as applied to the Native Americans. The Fifth Circuit explained that with the exception of Muslims, who are subject to another court order, every religious group at the McConnell Unit was required to have a qualified outside volunteer present at religious ceremonies; thus, the infrequency of Native American services at the unit was due to a shortage of outside volunteers.

The Magistrate Judge stated that the summary judgment evidence in the present case showed between April of 2009 and June of 2010, there was no volunteer available to conduct Native American services, and so no services were held. During this period of time, the Magistrate Judge

said, the operation of the volunteer policy could well have posed a substantial burden to Hopson's exercise of his religious faith.

However, the Magistrate Judge went on to say that in Mayfield, the lack of worship opportunity was a continuing circumstance and so the controversy remained live. In the present case, the Magistrate Judge said that the evidence showed that a contract chaplain has been hired and so worship services have resumed.[2] In addition, a means of providing worship services for the Native Americans through DVD's has been provided, much like the DVD's of services which were made available to the YEA adherents in Adkins. Based on these facts, the Magistrate Judge concluded that Hopson's claims are moot.

In support of this conclusion, the Magistrate Judge again looked to Mayfield. After that case was remanded by the Fifth Circuit, the parties agreed that Mayfield's claims concerning religious paraphernalia were moot because inmates were allowed to purchase and possess the stones and religious literature was no longer being denied solely on the basis of runes or symbol translation. The parties also agreed that the requirement of an outside volunteer did not itself impose an undue burden and stated that Odinist activities would be permitted if a chaplain, chaplain's assistant, or approved volunteer agreed to assist in Odinist religious activities.

The Magistrate Judge next addressed the "capable of repetition yet evading review" exception to the mootness doctrine, concluding that this exception did not apply because the unit had made provisions to hold worship services, albeit by DVD, in the absence of a contract chaplain or volunteer, and Hopson had not shown a demonstrated probability or reasonable expectation that the Native Americans would again be without worship services for extended periods of time.

---

[2]The affidavit of Cynthia Lowry, attached to the Defendants' response to the plaintiff's motion for summary judgment, indicates that outdoor pipe ceremonies have resumed, beginning in July of 2011. An affidavit attached to Hopson's motion as a matter of law asserts that the outdoor ceremony held in July of 2011 was "supposed to be" a pipe ceremony but was not. He contends, and the Court accepts as true, that no pipe ceremony was held at the July 2011 gathering.

Although Hopson did not raise the "voluntary cessation" exception, the Magistrate Judge also determined that this exception did not apply, because the Defendants were working to address the problem of lack of services for Native Americans by actively seeking volunteers to handle the services, and had implemented a means to prevent reoccurrence by obtaining DVD's which could be shown in the absence of a volunteer.

To the extent that Hopson raised an Equal Protection claim, the Magistrate Judge concluded that this was without merit.  Hopson's Step One and Step Two grievances complained that Native Americans were treated differently from Christians and Muslims; at the evidentiary hearing, he noted that the chaplain's schedule contained slots for Native Americans on the first and third Wednesdays of the month, but that "everything else predominantly are Christian services."  He conceded that most of the inmates were Christian and said that "we're not trying to say it's us against the Christians.  I don't mean it to sound that way."

As the Magistrate Judge noted, the Muslim inmates are exempt from the policy requiring volunteers or contract chaplains because they have a special court order exempting them from this requirement.  Thus, the Native Americans are not "similarly situated" to the Muslims for purpose of an Equal Protection challenge.

Hopson offered no evidence to show that Christian groups routinely met without volunteers present.  As the Magistrate Judge said, the Fifth Circuit and the Supreme Court have explained that the Constitution does not require that every religious group in prison, however small in number, have identical facilities or personnel, or that a special chapel or place of worship be provided for every faith regardless of size.  Thus, the fact that more services are offered for Christian inmates, comprising the majority of prisoners on the unit, does not itself amount to a violation of equal protection so long as the Native Americans are afforded a reasonable opportunity to worship as well.

In a "conclusion and summary," the Magistrate Judge stated that there was no factual dispute that Native Americans at the Michael Unit were denied services from April of 2009 until June of 2010, some fourteen months later.  While the Magistrate Judge expressed concern over this extended

period of time, this condition - the denial of services - has now been rectified.  A new contract chaplain has been hired, and services resumed even prior to her arrival; in addition, DVD's have been obtained, as in Adkins, to ensure that the Native Americans would be able to have religious observances even in the absence of a volunteer.  The Magistrate Judge therefore recommended that the lawsuit be dismissed as moot.

### Hopson's Objections

Hopson filed objections on August 30, 2011.  In his objections, Hopson says first that his claims are not moot because pipe ceremonies have not resumed, nor have they been able to have a prayer service in accordance with their beliefs since April of 2009.  He goes on to argue that Chari Bouse and Dr. Bob Pierce are not "ceremonial pipe carriers," saying that it is against Bouse's religious beliefs to conduct pipe ceremonies for Native Americans.  Hopson complains that TDCJ employs Native American chaplains with no experience in traditional pipe ceremonies.

These objections concerning pipe ceremonies lack merit because Hopson did not exhaust his claims about pipe ceremonies.  In addition, Hopson's objections largely contradict the arguments which he made throughout his pleadings.  At the evidentiary hearing, Hopson argued that the unit chaplain was "inter-faith" and thus could oversee Native American services.  He contends at great length in his pleadings that any unit officials, not merely approved volunteers, should be able to oversee the Native American ceremonies.  In his objections, however, he now says that even the contract chaplains hired by TDCJ for Native American ceremonies are not qualified to conduct these ceremonies.  This contention is without merit.

In Flanagan v. Shipman, civil action no. 3:08cv204, 2010 WL 5579815 (N.D.Fla., December 3, 2010, no appeal taken), the plaintiff Dennis Flanagan, an inmate in the Florida Department of Corrections, complained that the defendant Mark Shipman, Senior Chaplain at Century Correctional Institution, had "cancelled all Native American religious services, confiscated all approved Native American plants, and denied the Native American practitioners their ability to pray to their creator." Flanagan also claimed that Shipman denied the Native American inmates the use of a designated

13

location for services and the use of staff to hold services.  On March 1, 2007, Flanagan said, Shipman removed the Native American service completely from the Chapel's list of services. Another chaplain allowed the Native Americans to meet when Shipman was not there, but this practice ended in August or September of 2007.  In November of 2007, the Native Americans practitioners were forced to stop going to the chapel.

On summary judgment, Shipman denied telling Flanagan that he did not have to allow Native American services or that he was not concerned with those "pagan services."  He said that he was not permitted to conduct the pipe ceremony under FDC regulations, but noted that Native American practitioners were not permitted to participate in smoking or smudging rituals without a Native American practitioner/volunteer present to conduct and supervise the ritual.

The outdoor services were discontinued, and when the Native Americans met with Shipman to ask that they be reinstated, Shipman refused to do so, saying that an approved Native American spiritual advisor or pipe bearer would have to be obtained before outdoor services could be resumed. A box of sacred items was seized as contraband, and Shipman said that the Native Americans could not use the items or pray until they had an outside sponsor.

The district court held that Shipman had upheld departmental policies and procedures, and observed that "had a qualified Native American chaplain been at Plaintiff's institution, or a Native American volunteer come forward, Plaintiff could have benefitted from a more complete exercise of his religious freedom."  The court granted summary judgment for the defendants, holding that the fact that Flanagan could not participate in a pipe ceremony unless a qualified volunteer or chaplain was present did not amount to a substantial burden on his free exercise of religion.

With regard to Flanagan's RLUIPA claims, the court noted that the inmates could meet together to discuss their beliefs, attend worship, and pray.  The court went on to state as follows:

> However, what they cannot do is meet together as a group outside, engage in pipe smoking or smudging ceremonies unless, pursuant to the rules, an outside volunteer who is qualified to handle certain sacred items is present.  If a volunteer is available, then Plaintiff and other Native American adherents may participate in outside pipe-smoking and smudging ceremonies.  This does not substantially burden the practice

14

of Plaintiff's religion.  It is an inconvenience, but Plaintiff has viable alternatives. He is not forced to forego religious precepts.

Plaintiff's inability to engage in those two activities is a result of unavailable volunteers and not actions by the defendant, although defendant is following prison policies.  These policies are necessary and justified by an important governmental interest as explained above.  In context, the security concerns are a compelling interest.

Thus, the district court in <u>Flanagan</u> rejected the contention that the denial of pipe ceremonies or smudging was in and of itself a substantial burden upon the inmates' exercise of religious freedom. As in that case, Hopson and the other Native Americans at the Michael Unit are now being afforded services, and the evidence shows that a Native American contract chaplain, Chari Bouse, has been hired.  Hopson's objections indicate that neither Bouse nor Dr. Bob Pierce are qualified, in his view, to conduct pipe ceremonies, and so as in <u>Flanagan</u>, Hopson's inability to participate in such ceremonies is not the result of any actions by the defendant in this case, but the lack of qualified personnel or available volunteers.[3]

Because services for the Native Americans have now resumed, Hopson has not shown that his right to exercise his religious freedom is being "substantially burdened" or that he does not have a reasonable opportunity to practice his faith; he cannot plausibly maintain that providing him with anything other than the ceremony which he believes appropriate, conducted by persons of whom he approves, amounts to a substantial burden.  Similar claims were rejected in <u>Adkins</u>, where DVD's of services were provided when the volunteer was not available, and in <u>Freeman</u>, where the inmates complained that the Church of Christ chaplain had "departed from the faith." The Magistrate Judge did not err in determining that Hopson's claims were mooted by the fact that services for Native Americans at the Michael Unit have now resumed.

---

[3]Hopson says that "why TDCJ continues to employ Native American chaplains with no experience in traditional pipe ceremonies in an attempt to accommodate the Native Americans' needs to resolve the burden of religious worship is beyond Hopson's understanding." The Religious Land Use and Institutionalized Persons Act does not require that prison officials hire only chaplains whose training and experience comports with what inmates may believe is proper or appropriate. *See generally* <u>Freeman v. Texas Department of Criminal Justice</u>, 369 F.3d 854 (5th Cir. 2004).

In his second objection, Hopson challenges the Magistrate Judge's determination that he had failed to exhaust his administrative remedies on all of his claims.  He says that in his Step One grievance no. 2009195522, he stated as follows:

> TDCJ, Pierce, Lowry, Kirkpatrick, Different, and Rupert are substantially burdening my Native American beliefs / practices by denying me any and all access to gather and worship in accordance with the mandates of my faith.

Hopson argues that the term "practices" includes all Native American physical acts of religious exercise, including but not limited to gathering for group prayer pipe ceremonies, smudging. Having direct contact with Mother Earth, the use of non-desecrated prayer pipes and other related ceremonial items, oral ministering and teaching, cleansing of the sacred circle with herbs and the setting of stones in preparation for pipe ceremonies, and the beating of drums and shaking of rattles.

Hopson further states that the phrase "denying me any and all access to gather for worship" means not allowing the Native Americans to come together in prayer as a religious community, including the use of ceremonial items to conduct prayer ceremonies and having access to bare ground outdoors. He says that the phrase "in accordance with the mandates of my faith" means having access to gathering and worshipping the Indian way, including having access to and utilizing non-desecrated religious herbs and praying implements and the holding of pipe ceremonies outdoors.

Hopson concedes that he did not break down and define these meanings in his Step One grievance.  However, he nonetheless argues that this grievance "put the TDCJ and its agents on notice thus giving them an opportunity to address and resolve Hopson's substantial burden claim. Instead, TDCJ chose not to investigate Hopson's claims in accordance with prescribed grievance policy in order to resolve Hopson's religious claims."

42 U.S.C. §1997e does not say how specific a prisoner's grievance must be.  The Fifth Circuit has held that a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit. Johnson v. Johnson, 385 F.3d 503, 517 (5th Cir. 2004).  The TDCJ rules direct that inmates write "briefly and clearly," and that they be "very specific about your grievance or problem." The

16

grievance should contain facts, not "legal words or conclusions," and the grievant is directed to "tell us what action you want us to take to resolve your grievance or your problem," although a grievance may not request disciplinary action against employees.  Johnson, 385 F.3d at 515-16.

General allegations such as Hopson's, that the defendants "are substantially burdening my Native American beliefs / practices by denying me any and all access to gather and worship in accordance with the mandates of my faith," simply cannot be held to encompass every possible legal or factual theory which may be implied within those phrases, because it does not put prison officials on notice of the specific problems involved, nor give them a fair opportunity to address the problem that will later form the basis of the lawsuit.  *See, e.g.*, Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001, cited with approval in Johnson) (grievance specifically complaining of a beating by a guard did not exhaust a failure-to-protect claim against another guard who stood by and watched, but who was not mentioned in the grievance).  Hopson's claim on this point is without merit.

In his next objection, Hopson again says that Chari Bouse is not a ceremonial pipe carrier and therefore cannot provide pipe ceremonies for the Native Americans at the Michael Unit.  He says that it is "disputed" whether services has resumed, but his pleadings refer to a service conducted in July of 2011, which some 60 inmates attended.  This objection is without merit.

In his fourth objection, which is related to his third, Hopson says that Chaplain Lowry perjured herself in her affidavit by claiming that Native Americans were having a pipe ceremony in July of 2011.  He again complains that Chari Bouse is not a ceremonial pipe carrier and therefore cannot provide pipe services for the Native Americans.  Lowry's affidavit, which is dated June 29, 2011, says that a pipe ceremony has been scheduled for July of 2011.  Even if in fact no pipe ceremony was actually held, this does not show that the affidavit, made before the fact, was "perjured."  Hopson's objection on this point is without merit.

Fifth, Hopson says that the DVD's are not substitutes for services because they are not religious videos, and that they could not substitute for baptism or communion any more than they could substitute for pipe ceremonies.  In Adkins, the Fifth Circuit indicated that the availability of

video and audio tapes was one factor in determining that the inmates had reasonable alternative means of practicing their faith.  Adkins, 393 F.3d at 564.  In the present case, the Magistrate Judge concluded based on the pleadings that the DVD's were simply a means by which the prison authorities could ensure that Native Americans would not go for long periods of time without some opportunity for gathering, as happened between April of 2009 and June of 2010.  The DVD's do not appear to be meant as a substitute for live services for a long period of time, and the Magistrate Judge offered no opinion as to whether the use of DVD's over a long period of time would amount to an effective denial of services to Native Americans.  This objection fails to show that the Magistrate Judge erred in concluding that Hopson's claims were moot, and thus is without merit.

In his sixth objection, Hopson complains of a number of "false findings."  The first six of these allegedly false findings center around Hopson's claim that the Native Americans at the unit are not being provided with pipe ceremonies.  As the Magistrate Judge determined, Hopson did not exhaust his claims concerning pipe ceremonies.  Hopson next complains of "false findings" regarding First Amendment free exercise claims, which he denies raising.

Hopson cites as a "false finding" the following statement by the Magistrate Judge: "He [Hopson] concedes that qualified Native American volunteers are 'very rare' and cites a case called Hyde v. Dretke, from 1994."  In fact, Hopson says, he stated that "the dearth of volunteers goes as far back as 1994 in Hyde v. TDCJ."  He then went on to cite Hyde v. TDCJ, 948 F.Supp. 625 (S.D.Tex. 1996).  Other than a minor discrepancy in the case style, Hopson fails to show a "false statement."  The Hyde case was filed in 1994 and decided in 1996.  Similarly, Hopson complains that the Magistrate Judge quoted an affiant in the present case, Robert Hart, as saying that there were four pipe ceremonies per month at the Hughes Unit, when in fact there were only two.  While Hart did say that there were only two pipe ceremonies per month at the Hughes Unit, this does not provide any valid basis for setting aside the Magistrate Judge's Report.

Next, Hopson again complains of a "false finding" that he did not exhaust his administrative remedies concerning pipe ceremonies or sacred land.  As explained above, his Step One and Step

18

Two grievances did not present or even mention the issues of pipe ceremonies or sacred land and thus did not serve to exhaust these claims.

Hopson goes on to argue that his case differs from <u>Adkins</u> because he is not complaining that the volunteer policy is itself unconstitutional or that it places a substantial burden upon his religious exercise, but that its application to him substantially burdens his exercise of his religious faith.  Thus, he says that his case differs from <u>Adkins</u>.  However, the <u>Adkins</u> case involved the application of the policy to the plaintiff as well as the other adherents of Yahweh's Evangelical Assembly.  *See, e.g.*, <u>Adkins</u>, 393 F.3d at 571 (discussing how Adkins was and is prevented from congregating with other YEA members on many Sabbath and YEA holy days, because of a dearth of qualified outside volunteers available to go to the Coffield Unit on every one of those days).  This complaint is without merit.

Similarly, Hopson asserts that the Fifth Circuit has never upheld the application of the volunteer program, despite the fact that in <u>Adkins</u>, the Fifth Circuit stated that the acts of the defendants, including enforcing the volunteer policy by not allowing the inmates to meet in the absence of a volunteer, "have not placed a substantial burden on Adkins' free exercise of his YEA religion, within the contemplation of RLUIPA."  Adkins challenged the application of the volunteer policy to him, asserting that this application violated his rights under RLUIPA, and the Fifth Circuit rejected this challenge.

Next, Hopson again contends that his claims are not moot because pipe ceremonies are not being conducted.  As noted above, his claims regarding pipe ceremonies have not been exhausted.  While Hopson asserts that he has now filed a grievance about pipe ceremonies and the process on this grievance will be completed by trial, the Fifth Circuit has made clear that completion of the grievance process after the lawsuit is filed does not satisfy the exhaustion requirement.  <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir.1998); Moore v. Cherian, 104 Fed.Appx. 444, 2004 WL 1842609 (5th Cir., August 18, 2004).  Hopson's disagreement with the qualifications of Dr. Bob Pierce and Chari Bouse to conduct a pipe ceremony also do not show any basis for setting aside the

19

Report of the Magistrate Judge even had this claim been exhausted, which it was not.  *Cf.* Freeman, 369 F.3d at 864.

Hopson next says that his complaint is not moot because he is seeking a permanent injunction "to prohibit the defendants from denying prayer pipe ceremonies when there are no qualified Native American chaplains and approved volunteers.  He wants the court to issue a ruling permitting them to gather and worship when an approved volunteer or contract [chaplain] is unavailable under the direct supervision of unit chaplaincy staff and prison security."  His complaints about pipe ceremonies have not been exhausted, and the record shows that the prison now has hired a contract chaplain to oversee services for Native Americans.  This objection is without merit.

In his sixth objection, Hopson asserts that material facts remain in dispute, including whether pipe ceremonies have resumed in accordance with the mandates of his faith, which include pipe ceremonies twice a month, oral teachings twice a month, smudging, having access to non-desecrated religious prayer paraphernalia, the honoring of Native American memorial days, and the performance of other physical acts of religious exercise fundamental to traditional Native American beliefs. Hopson's claims about pipe ceremonies, smudging, access to non-desecrated religious paraphernalia, and memorial days have not been exhausted.  As the Magistrate Judge concluded, Hopson has exhausted his claims that Native Americans are not allowed to gather and worship unless a contract chaplain or volunteer is present, and that Native Americans are being treated differently from Christians and Muslims in this regard.  The Magistrate Judge correctly determined that these claims, the only exhausted ones, are moot, and Hopson's objections are without merit.

The Court has conducted a careful *de novo* review of the pleadings in the cause, including the original complaint and testimony at the hearing, the dispositive motions filed by the parties as well as the responses thereto, the summary judgment evidence, the Report of the Magistrate Judge, and the Plaintiff's objections thereto.   Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit.  It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 75) is ADOPTED as the opinion of the District Court.  It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED as moot.  This dismissal shall serve as a dismissal without prejudice of those claims upon which Hopson failed to exhaust his administrative remedies, as set out above, including his claims that he has been denied a "proper" religious experience through the lack of pipe ceremonies twice a month, oral teachings twice a month, smudging, having access to non-desecrated religious prayer paraphernalia, the honoring of Native American memorial days, and the performance of other physical acts of religious exercise fundamental to traditional Native American beliefs.  It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 29th day of September, 2011.**

LEONARD DAVIS
UNITED STATES DISTRICT JUDGE